TUCKER (SPAULDING v.). See Cases Nos. 13,220 and 13,221.

TUCKER (TINGLE v.). See Case No. 14,057.

---

# Case No. 14,227.

## TUCKER v. TUCKER MANUF'G CO.

[4 Cliff. 397; 2 Ban. & A. 401; 10 O. G. 464.] [1]

Circuit Court, D. Massachusetts. Sept. 1, 1876.

PATENTS—SPECIFICATIONS—EXACT DESCRIPTION—REISSUE—VALIDITY—CONSTRUCTION—INFRINGEMENT—BRONZING IRON.

1. An exact description of an invention is requisite for three purposes. That the government may know what they have granted, and what will become public property when the patent expires. That licensees may know how to use and practise the invention during the term of the patent. That subsequent inventors may know what portion of the field of invention has been occupied.

2. Persons seeking redress for the unlawful use of an invention covered by letters-patent owned by them are obliged to allege and prove that they, or those under whom they claim, are the original and first inventors of what is claimed in said patent; but the letters-patent in due form, introduced in evidence, afford a prima facie presumption sufficient to support such allegation until rebutted.

[Cited in Herring v. Nelson, Case No. 6,424.]

3. Where it appears, on a comparison of the two instruments by the court, that the reissue patent is for a different invention from that described in the original, then the reissue is invalid, as the state of facts shows that the commissioner exceeded his jurisdiction.

4. Errors and imperfections in the original may be corrected in the reissue, and the patentee be allowed to redescribe his invention, within the limit of what was described, suggested, or indicated in the original patent.

5. Whether a reissue covers no more than the invention described in the original patent, is a question of construction for the court, aided or not, by expert evidence, as it may or may not appear that technical terms, or terms of art, in the

1 [Reported by William Henry Clifford, Esq., and Hubert A. Banning, Esq., and Henry Arden, Esq., and here reprinted by permission.]

specifications, require explanation, in order to arrive at their true meaning.

6. Corrections may be made in a reissue specification, but not of a character to change the substantial nature of the invention.

7. In this case the defendants, while assignees of the complainant, had acknowledged the validity of his patent.

8. After reassigning the patent back to the complainant (the inventor), the respondents endeavored to reach the same results as were accomplished by the patented process, without infringing the complainant's patent; but the court held that the attempt to avoid the charge of infringement was merely colorable, and that complainant was entitled to an account and an injunction.

Bill in equity [by Hiram Tucker] for the infringement of certain letters-patent [No. 40,964, granted to complainant December 15, 1863, and reissued September 11, 1866, Nos. 2,355 and 2,356] for a new and useful method for coloring iron, in imitation of bronze.

Chauncey Smith, Walter Curtis, and Charles M. Reed, for complainant.

George L. Roberts and Reuben L. Roberts, for respondents.

CLIFFORD, Circuit Justice. Inventors, if they desire to secure letters-patent for their inventions, must apply to the commissioner therefor, in writing, and the requirement is that they shall file in the patent office a written description of the invention, and of the manner and process of making, constructing, and using the same, in such full, clear, concise, and exact terms as to enable any person, skilled in the art or science to which it appertains, to make, construct, and use the invention. 16 Stat. 201.

Pursuant to that provision, the complainant in this case applied, in writing, to the commissioner for a patent, describing his invention as a new and improved process or method of superficially bronzing or coloring iron, as more fully set forth in the specification of the patent. Iron, he asserts, has heretofore been japanned by covering its surface with oily solutions of asphaltum and pigments, and by the subsequent application of heat sufficient to produce hardness; and he also admits that metals have been lacquered or bronzed by the application of a solution of resin and metallic powders or salts, dried by exposure to air or heat. Both of these operations, he admits, are old and well known. Instead of that, his invention, as he alleges, consists in a process of covering iron with a very thin coating of oil, and then subjecting it to heat, the effect of which is to leave upon the iron a firm film, which is very durable, and which gives the iron a highly ornamental appearance, like that of bronze. Exact and complete description is given, in the specification, of the steps to be taken in applying the process so as to effect the described result. Three directions of the kind are given, as follows:—

1. That the surface of the iron to be bronzed shall be cleansed from sand, scales, or other foreign matter, and, where fine effects

are desired, the suggestion is that the surface should be polished or made smooth.

2. That the surface of the iron so prepared should be covered with a very thin coating of linseed oil, or some equivalent oil, and the suggestion of the patentee, in that regard, is that he attains such a coating by applying the oil with a brush, and then rubbing the oiled surface thoroughly with a rag, sponge, or other suitable implement.

3. That the iron so prepared and oiled should be placed in an oven. and exposed to heat of an intensity sufficient to change a brightened surface of clean unoiled iron, to a color varying from that of light straw to deep blue, until the required bronze color is developed upon the iron, the statement of the patentee being that the resultant shade of color will depend very much upon the degree of heat employed, as well as upon the duration of its application, which. in every case, may depend upon the skill, care, and judgment of the operator, both in the application of the oil, and in regulating and determining the degree and duration of the heat. Boiled linseed oil is preferred by the patentee, and he directs that the iron, when the desired shade of bronzing is obtained, be removed from the oven or furnace, and he specifies that the process of oiling and heating may be repeated with profit if it be desired to deepen the shade of the bronzing, it being understood that the effect of each repetition will be to deepen the shade until the color becomes black. High heat, the patentee states, when applied to unoiled iron, will have the effect to produce upon the surface of the iron the series of colors pointed out in the specification, but he asserts that a thin coating of oil, applied as directed before heating the iron, has the effect to modify the oxidation, and to produce a new and improved surface resembling bronze, and which is highly ornamental, and of a character to resist the effects of moisture and handling. Exhibits showing the practical results of the patented process were given in evidence at the final hearing, and they are abundantly sufficient to prove that the described steps are respectively essential to attain successful results, or. in other words, that it is essential that the surface of the iron should be cleansed from sand, scales, or other foreign matter, that the surface should be covered with linseed oil or its equivalent. unmixed with pigment, lacquer, or japan, that the coating should be extremely thin, and that the iron thus prepared and oiled should be placed in an oven or furnace and be subjected to a high degree of heat.

Exactitude in the description of an invention is required, for three reasons: (1) That the government may know what they have granted, and what will become public property when the term of the monopoly expires; (2) that licensed persons desiring to practise the invention may know, during the term, how to make, construct, and use the invention; (3) that other and subsequent inventors may know what part of the field of invention is unoccupied. Sufficient appears to show that the description of the invention given in the specification constitutes a full compliance with those several requirements. Discussion of the title of the complainant is unnecessary. as it is admitted in the answer filed by the respondents. and the complainant alleges that the respondents have, since they reassigned the patent to the complainant, infringed his exclusive right and privilege to make and use the invention, and to vend the same to others to be used, and he prays for an account of all gains and profits realized by the respondents from the unlawful use of the same, together with the damages suffered by the complainant by reason of such unlawful use, and for an injunction.

Process was served, and the respondents appeared and filed an answer, in which they deny the charge of infringement, and set up four other defences: (1) That the reissued patent on which the suit is founded is not for the same invention as the original; (2) that the process described in the specification was not the subject-matter of invention at the time the original patent was granted; (3) that the complainant is not the original and first inventor of the described improvement; (4) that the alleged invention was known to, and was used by, the persons named in the answer before the complainant applied for a patent.

Persons seeking redress for the unlawful use of letters-patent are obliged to allege and prove that they, or those under whom they claim, are the original and first inventors of the improvement, and that the same has been infringed by the party against whom the suit is brought, and the burden to establish those allegations is, in the first place, upon the party instituting the suit; but the law is well settled that the letters-patent in question, where they are introduced in evidence in support of the claim, if they are in due form, afford prima facie presumption that the alleged inventor is the original and first inventor of what is therein described as his improvement. Seymour v. Osborne, 11 Wall. [78 U. S.] 538. Apply that rule to the case before the court, and it is clear that the decision must turn chiefly upon the defences set up in the answer.

Due description of the invention is given in the specification, and, the letters-patent being regular in form. the prima facie presumption is that the complainant is the original and first inventor of the alleged improvement. Defective patents may be surrendered and reissued, but the act of congress expressly requires that the reissue must be for the same invention as the original. and. consequently, where it appears on a comparison of the two instruments, as matter of legal construction, that the reissued patent is not for the same invention as that

embraced and secured in the original patent, the reissued patent is invalid, as that state of facts shows that the commissioner exceeded his jurisdiction. He may allow the specification to be amended if the patent is inoperative or invalid, and in that event he may reissue the patent in proper form. Errors and imperfections may be corrected, and with that view the commissioner may allow the patentee to re-describe his invention, and to include in the description and claims of the patent, not only what was well described before, but whatever else was suggested or substantially indicated in the specification, model, or drawings, which properly belonged to the invention as actually made and perfected. Interpolations of new features or devices which were neither described, suggested, nor indicated in the original specifications, drawings, or patent-office-model are not allowed, for the plain reason that the commissioner has no jurisdiction to grant a reissue unless it be for the same invention as that embodied in the original patent. Sickles v. Evans [Case No. 12,839].

Whether a reissued patent is for the same invention as that embodied in the original patent, or for a different one, is a question for the court, to be determined as a matter of construction on a comparison of the two instruments, aided or not by the testimony of expert witnesses, as it may or may not appear that one or both may contain technical terms, or terms of art requiring such assistance in ascertaining the true meaning of the language employed.

Reissued patents are valid unless the differences between the reissued patent and the original are such that the court can see, upon the comparison of the two instruments, as matter of legal construction, that the reissued patent is not for the same invention as the original. Common knowledge shows that the mechanism of a loom and of a sewing-machine are essentially different, and it would follow that a patent for one could not be surrendered and reissued for the other, as the court could see, as matter of construction, that the commissioner, in granting the reissue, had exceeded his jurisdiction. Defects in the description may be cured, but the patentee may not strike out the entire description of one of the ingredients of a combination, and insert in lieu thereof a description of other devices, unless it be alleged that such other devices are the equivalents of the device stricken out. Gill v. Wells, 22 Wall. [89 U. S.] 2.

Corrections may be made in the specification, but they must not be of a character to change the substantial nature of the invention, either by enlarging or diminishing its legal effect or substantial mode of operation. Questions of some nicety may arise, but the rule being that the reissued patent must be sustained unless it appears, as matter of legal construction, that it is not for the same invention as the original, it will seldom happen that the question will be involved in much difficulty. Differences undoubtedly exist between the expressions contained in the respective specifications in this case, but it is clear that they are not of a character to warrant the court in deciding that the reissued patent differs in substance and legal effect from the original which was surrendered.

Much examination of the second defence is unnecessary, as the issue presented is entirely one of fact. Taken as a whole, the proofs are convincing that the oil coating, under the process of the complainant, is oxidized with the surface of the iron, and that the joint effect is to produce a new surface resembling bronze in color, better calculated to resist the effects of moisture and handling than iron smoothed in the ordinary way.

Properly construed, the invention of the complainant is the process of ornamenting iron in imitation of bronze by the application of oil and heat, as specifically described in the specification, by which a new surface is produced to the iron, which resembles bronze in color, and is better calculated to resist the effects of moisture than iron smoothed in the usual way. Construed in that way, as the patent should be, it is clear that there is no proof in the record to show that the complainant is not the original and first inventor of the improvement. Widely different views are entertained by the respondents as to the construction of the patent, and hence they contend that the proofs sustain their defence, that the invention is not novel; but the court is unable to adopt their theory as to the construction of the patent, and consequently does not think it necessary to respond very fully to their course of argument under the present head, the court being decidedly of the opinion that complainant is the original and first inventor of the alleged improvement.

Most of the remarks of the court under the preceding head are also applicable to the fourth defence set up by the respondents. Assume that the patent is properly construed by the court, and it follows that the respondents utterly fail to show that the process of the complainant was ever known or used prior to the application of the complainant for his original patent.

Nothing remains to be considered except the question of infringement, which may properly be disposed of by a few observations. Enough appears to show that on the 15th of December, 1863, the original patent was granted to the complainant; that on the 3d of March, 1865, he assigned the same to the respondents; that on the 11th of September, 1866, the original patent was surrendered and was reissued to the respondents as the assignees of the complainant; that the respondents, on the 27th of August, 1872, reassigned the invention, as secured by the reissued patent, to the complainant.

Throughout that period, to wit, from the 3d of March, 1865, to the 27th of August, 1872, it appears that the respondents held the title to the invention, as secured by the original and reissued patent, and it appears that they, during that time, manufactured large quantities of goods by the process described in those patents, and that they paid royalties to the complainant for the right to use the process, and that throughout that whole period they acknowledged the validity of the patented invention.

. None of those matters are in controversy, but the charge is that respondents, since they reassigned the patented invention to the complainant, have unlawfully continued to use the same without license, and have refused to pay any royalty to him for such, or to acknowledge his legal and just rights under the reissued letters-patent. Suffice it to say that the proofs fully establish that charge, and show that the respondents went immediately to work to see if they could not effect the same results as those accomplished by the patented process without infringing the same, and they now contend that they have been successful in their efforts. Instead of that, the court is of the opinion that they have plainly infringed the patented process, that the attempt to avoid the charge of infringement is merely colorable, and that the complainant is clearly entitled to an account and to an injunction.

[For other cases involving this patent, see Tucker v. Burditt, Case No. 14,216; Id., 5 Fed. 808; Tucker v. Corbin, Id. 810; Tucker v. Dana, 7 Fed. 213; Tucker v. Sargent, 9 Fed. 299.]